November 3, 1977

## 77–63  MEMORANDUM OPINION FOR THE JUDGE ADVOCATE OF THE NAVY

### Immigration Status of Persons Employed by Nonappropriated Fund Instrumentalities of the United States

This responds to your request for our opinion on a question involving the status of certain persons who are or have been employees of "nonappropriated fund instrumentalities" (NAFI) of the United States abroad. The question is whether they are eligible for classification as "special immigrants" under § 1101(a)(27)(G) of the Immigration and Nationality Act, as amended (the Act), 8 U.S.C. § 1101(a)(27)(E).

Section 101(a)(27)(G), as amended, defines "special immigrant" as an immigrant who is an "employee, or an honorably retired former employee, of the United States Government abroad" if recommended by an appropriate Foreign Service officer, with the approval of the Secretary of State and provided that he or she (the immigrant) has completed "fifteen years of faithful service." A "special immigrant" is entitled to special consideration in connection with his application for admission to this country.

The answer to your question turns upon the meaning of the phrase "employee . . . of the United States." If an employee of a nonappropriated fund instrumentality is an "employee . . . of the United States" within the meaning of the Act, then, upon the completion of 15 years of service, he is eligible for classification as a special immigrant upon the recommendation and with the approval of the appropriate officers.

The Act does not define the phrase "employee . . . of the United States," and does not refer to nonappropriated fund instrumentalities. The legislative history is scant. The relevant committee reports state simply that the decision to extend "special immigrant" status to certain Federal employees was "a result of representations made by the Department of State that there are exceptional cases of aliens who have served faithfully in the employment of this Government abroad over long periods of time and that it is desirable in the interest of this Government to facilitate their entry into the United States." S. Rep.

No. 1137, 82d Cong., 2d Sess., 18; H. Rep. No. 1365, 82d Cong., 2d Sess., 42.

In the absence of definitive legislative guidance, we must attempt to answer your question by relying upon general principles and upon judicial decisions that have discussed and defined the status of NAFI employees in other contexts. The point of departure is *Standard Oil* v. *Johnson,* 316 U.S. 481 (1942). In that case, in connection with a dispute over State tax liability, the Supreme Court examined the relationship between a nonappropriated fund instrumentality (an Army post exchange) and the Government of the United States. In an opinion by Mr. Justice Black, the Court held that the post exchange was an "arm" of the War Department and that it was therefore possessed of whatever immunity the War Department enjoyed under the Constitution and Federal statutes.

The Court had no occasion to discuss the nature of the status of employees of post exchanges, but in later years the teaching of the case—that post exchanges are "arms" of the Government—provided a basis for a number of decisions, in the lower courts, holding that NAFI employees are employees of the United States. *See, e.g., United States* v. *Forfari,* 268 F. 2d 29 (9th Cir. 1959).

The Supreme Court's decision also evoked a response in Congress. In 1952 Congress enacted a statute providing that certain employees paid from nonappropriated funds should *not* be deemed to be employees of the United States for certain purposes, to wit: (1) for purposes of laws administered by the Civil Service Commission, and (2) for purposes of laws relating to the compensation paid by the Government on account of the disability or death of Federal employees. Act of June 19, 1952, 66 Stat. 138 (1952).

The decisions and the legislative action do not compel the conclusion that NAFI employees are employees of the United States within the meaning of the Act, but they do lend substantial support to that view. The cases turned upon a general reading of the relation between NAFI's and the Government. The prevailing view was that NAFI employees were employees of the Government even though no statute expressly conferred that status upon them. The legislative action was premised upon a similar proposition. Congress assumed that in the absence of an express statutory exclusion, NAFI employees could be regarded as· employees of the United States under the rationale of *Standard Oil* v. *Johnson, see* H. Rep. No. 1995, 82d Cong., 2d Sess., 2. As the legislative history of the 1952 statute indicates, it was not intended that the action taken in light of that assumption should confer new rights and privileges upon NAFI employees, but neither was it intended that the statute should take away existing rights and privileges. The fact that Congress found it necessary to remove NAFI employees from the class of Federal employees for certain purposes suggests that they may be regarded as Federal employees for other purposes. *Expres-*

*sio unius est exclusio alterius.* [1] Taken together, the cases and the legislative history provide support for the view that, as a general rule, NAFI employees should be regarded as employees of the United States unless a Federal statute provides otherwise.

We now turn to the Act. We find nothing in the language or history of the Act that would suggest that the phrase "employee . . . of the United States" was intended to have a restricted meaning. Congress' primary intention was to facilitate the immigration of persons who have served the Government abroad. There is no suggestion in the statute that Congress intended to withhold that privilege from a class of otherwise qualified individuals solely because their wages have been paid from nonappropriated funds. Further, we note that Congress had ample opportunity to exclude these individuals. The Act and the special statute removing NAFI employees from the class of Federal employees for certain purposes were passed during the same legislative session. If Congress had wanted to withhold the immigration privilege from NAFI employees, a means of withholding that privilege was in hand.

For these reasons, we concur in your view that NAFI employees are eligible for classification as "special immigrants" under the Act if they satisfy the statutory requirements respecting years of service, recommendation, and approval.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[1] "Expression of one thing is the exclusion of another."